UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SELAMAWIT KIFLE WOLDE,<br><br>Petitioner,<br><br>v.<br><br>LORETTA LYNCH, *et al.*,<br><br>Respondents. | Civil Action No. 14-619 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM AND ORDER

The petitioner, Selamawit Kifle Wolde, brings this action, pursuant to 8 U.S.C. § 1421(c), against the Attorney General of the United States and the District Director of the Washington Field Office of the United States Customs and Immigration Services ("USCIS") (collectively, the "government"), seeking *de novo* review of USCIS's denial of her Form N-400, Application for Naturalization. Pet. at 1, ECF No. 1.[1] The petitioner, who entered the United States on February 23, 2005, as a lawful permanent resident under a diversity visa, was denied the opportunity to naturalize as a citizen because USCIS claims that she fraudulently concealed the existence of her daughter on the diversity visa application, which is called a Form DS-230, and during her interview with consular officials, rendering her admittance as a permanent resident unlawful. *Id.* ¶ 14; Govt.'s Mem. Supp. Mot. Summ. J. ("Govt.'s Mem.") at 5, ECF No. 13. The government has moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the ground that the petitioner omitted the existence of her daughter on a different form, the Electronic Diversity Visa Entry Form ("EDV Entry Form"). *See* Govt.'s Mot. Summ. J.

---

[1] Loretta Lynch has succeeded Eric Holder as the Attorney General of the United States. Consequently, Ms. Lynch is automatically substituted in place of Mr. Holder as party to this action. *See* FED. R. CIV. P. 25(d).

1

("Govt.'s Mot.") at 1, ECF No. 13.  For the following reasons, the government's motion is denied.

I.    **BACKGROUND**

Relevant to disposition of the pending motion are three critical steps the petitioner took to obtain the diversity visa with which she entered the United States in 2005.  These steps are summarized briefly here.

First, the petitioner entered into the diversity visa lottery for applicants seeking to enter the United States in 2005 from her native country of Ethiopia by submitting an EDV Entry Form some time during November or December 2003.  Govt.'s Statement of Uncontested Material Facts ("Govt.'s SMF") ¶ 4, ECF No. 13-1.  The petitioner, who did not speak English or have internet service at the time, avers that the owner of an internet café in Addis Ababa completed and submitted the EDV Entry Form for her.[2]  Pet. ¶ 7; *id.*, Ex. 3 (Aff. of Mr. Gezahagn Mamo Ayano, the Owner of Z-Photo, stating that he "had been providing free DV (Diversity Visa) lottery application services;" petitioner "was one of the customers whom we served during the DV-2005 application period when internet application started for the first time;" and that when the petitioner "won the visa lottery she came to our work place and expressed her great delight to us.") at 17, ECF No. 1-1.  In light of the circumstances under which the EDV Entry Form was completed, the petitioner avers that she "does not recall whether she listed her daughter on the EDV Entry Form or not."  Pet.'s Statement of Genuine Issues and Objections ("Pet.'s SMF") ¶ 2, ECF No. 16-1.  Neither party submitted a copy of the petitioner's EDV Entry Form.

Second, after being selected as one of the winners of the diversity visa lottery, on July 6, 2004, the petitioner submitted her diversity visa application, Form DS-230.  Govt.'s SMF ¶¶ 8–

---

[2]    The governing regulation, 22 C.F.R. § 42.33, permits persons other than the alien petitioner to "file a petition on behalf of the alien" should the alien petitioner so request.  22 C.F.R. § 42.33(b).

10.  Mistakenly understanding that the form required her to disclose only those relatives who intended to accompany her to the United States, the petitioner disclosed only her then-husband, Zelalem Mengesha, whom she had married on July 4, 2004.  Pet. ¶¶ 8, 9; Pet., Ex. 2 ("Pet.'s Form DS-230") at 14, 15, ECF No. 1-1.  The petitioner did not disclose her daughter, who had been born while the petitioner was unwed and still in college, and whose father was not her then-husband, Mr. Mengesha. Pet. ¶¶ 6, 8.  At the time of submission of the DS-230, the petitioner's daughter was living with the petitioner's father.  *Id.* ¶ 6.

Finally, on December 13, 2004, the petitioner and her then-husband were interviewed, through an interpreter, by a consular officer at the United States Embassy in Addis Ababa. Govt.'s SMF ¶ 17.  When asked how many children the married couple had, the petitioner correctly answered none because Mr. Mengesha is not the father of her daughter and the couple had no children together.  *Id.* ¶ 18.  On December 29, 2004, the petitioner and her then-husband were approved for diversity visas.  *Id.* ¶ 20.  They entered the United States as permanent residents on February 23, 2005.  *Id.* ¶ 21.

Since the petitioner's arrival in the United States, she has worked hard to make a life for herself.  From June 2005 to November 2006, the petitioner worked two separate jobs.  Pet., Ex. 1 ("Pet.'s Form N-400") at 5, ECF No. 1-1.  In November 2006, she became a bank teller at PNC, a position she has held ever since.  *Id.*  In 2008, the petitioner, in addition to working at PNC, enrolled at the University of District of Columbia.  *Id.*  In 2009, after she divorced Mr. Mengesha, the petitioner married her current husband, the father of her daughter, Abathun Demeke Almaw.  *Id.* at 6, 7; Pet. ¶ 13.  The petitioner's daughter and husband joined her in the United States in 2010 and 2014, respectively.  Govt.'s SMF ¶¶ 23, 24.

On January 5, 2010, just before her fifth anniversary since coming to America, the petitioner applied to become a United States citizen, disclosing both of her marriages and the information about her daughter. Govt.'s SMF ¶ 25; Pet.'s Form N-400 at 6–8. Her application for naturalization was denied because the immigration officer found that the petitioner "had concealed the existence of her child on her diversity visa application and at her consular interview," constituting "immigration fraud." Govt.'s Mem. at 5; Pet., Ex. 4 (Denial of Pet.'s App. Naturalization, dated June 27, 2012) at 24, ECF No. 1-1. The petitioner administratively appealed this decision, which was affirmed. Pet., Ex. 6 (Denial of the Pet.'s Form N-336, dated Dec. 20, 2013) at 35, ECF No. 1-1.

On April 15, 2014, the petitioner filed the instant lawsuit seeking *de novo* review of USCIS's denial of her application for naturalization under 8 U.S.C. § 1421(c). Govt.'s SMF ¶ 29; *see generally* Pet. Subsequently, the government filed a motion to dismiss for failure to state a claim, arguing, in marked contrast to the reasons given during the administrative proceeding, that even if petitioner had inadvertently omitted her daughter on the relevant forms, the petitioner "was never lawfully admitted to permanent residence" because she "failed to abide by all applicable immigration laws," and because this error rendered her inadmissible under INA § 212(a)(7)(A)(i)(II), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(II), regardless of fraudulent intent. *See* Govt.'s Mot. Dismiss at 10, 11, ECF No. 9. Noting that the government "attempt[ed] to side-step the clearly articulated claim in the [Petition] by seeking dismissal on grounds not considered by USCIS," the Court denied the government's motion to dismiss because "the [government's] contention that INA § 212(a)(7)(A)(i)(II) and § 203 render inadmissible any immigrant who misrepresents by omission information on a diversity visa application does not

4

appear supported by the statutory text." Minute Order Denying Govt.'s Mot. Dismiss, dated Mar. 31, 2015.

Just over a month after the Court's denial of the government's motion to dismiss, the government moved for summary judgment on the same grounds without any supplementation of the record, which consists entirely of the exhibits attached to the petition. *See generally*, Govt.'s Mot.

## II.     LEGAL STANDARD

### A.     Statutory Framework for Naturalization

This Court reviews *de novo* the administrative denial of the petitioner's application for naturalization, and "shall make its own findings of fact and conclusions of law." 8 U.S.C. § 1421(c). Therefore, the "deferential 'arbitrary and capricious' standard . . . does not apply in this context," *Kariuki v. Tarango*, 709 F.3d 495, 502 (5th Cir. 2013), and the reviewing court must "make its own findings of fact," *Nagahi v. I.N.S.*, 219 F.3d 1166, 1169 (10th Cir. 2000), with no *Chevron* deference due to the agency's statutory interpretation, *O'Sullivan v. U.S. Citizenship and Immigration Servs.*, 453 F.3d 809, 811 (7th Cir. 2006). As other courts have noted, "[t]his grant of authority is unusual in its scope," *Nagahi*, 219 F.3d at 1169, since it stands "in stark contrast to the appeal process for orders of deportation and petitions for asylum, in which federal courts accord the Attorney General great deference," *O'Sullivan*, 453 F.3d at 811.

An alien petitioner "bear[s] the burden of establishing by a preponderance of the evidence that [s]he . . . meets all of the requirements for naturalization," including the prerequisites that she "has resided continuously within the United States . . . for a period of at least five years after having been lawfully admitted for permanent residence," and "has been and continues to be a person of good moral character, attached to the principles of the Constitution of


the United States."  8 C.F.R. § 316.2; *see also I.N.S. v. Pangilinan*, 486 U.S. 875, 886 (1988) ("[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." (quoting *Berenyi v. Dist. Dir., Immigration & Naturalization Serv.*, 385 U.S. 630, 637 (1967))).  The alien petitioner does not need to "affirmatively come forward with proof to refute every conceivable basis for concluding that her admission did not comply with applicable law.  Rather, such proof is required only where there is some articulable reason to suspect that the applicant's admission was improper."  *Injeti v. U.S. Citizenship & Immigration Servs.*, 737 F.3d 311, 316 n.3 (4th Cir. 2013).

The determination of the petitioner's eligibility for naturalization is a "fact-intensive inquiry" that "would benefit from a hearing that would permit Petitioner to tell her story but also subject her to cross-examination."  *Ampe v. Johnson*, No. 14-717 (RDM), 2016 WL 247562, at *14 (D.D.C. Jan. 20, 2016).  Therefore, Congress permits the reviewing court to, "at the request of the petitioner, conduct a hearing de novo on the application," 8 U.S.C. § 1421(c), in accordance with the Federal Rules of Civil Procedure, FED. R. CIV. P. 81(a)(3) ("These rules apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions.").  *See e.g.*, *Atalla v. U.S. Citizenship & Immigration Servs.*, 541 Fed. App'x 760, 761-62 (9th Cir. 2013) (upholding a reviewing district court's finding that the petitioner was eligible for naturalization following "a hearing de novo on the USCIS' denial for lack of good moral character of his naturalization application"); *Kariuki*, 709 F.3d at 502 (noting that the reviewing court may "'conduct a hearing de novo on the application' . . . by admitting and reviewing evidence in accordance with the Federal Rules of Civil Procedure, which apply

pursuant to FRCP 81(a)(3) in the absence of statutory language to the contrary" (quoting 8 U.S.C. § 1421(c))).

### B. Summary Judgment

Summary judgment shall be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Therefore, the moving party, which in this case is the government, bears the burden to demonstrate the "absence of a genuine issue of material fact" in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party raises a dispute of material facts, these disputes "may not [be] resolve[d] . . . in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). In resolving a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 1863 (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986)). In addition, courts must avoid making "credibility determinations or weigh[ing] the evidence," since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000); *see also Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015).

### III. DISCUSSION

On summary judgment, eschewing the USCIS's administrative reasons for denial of the petitioner's application for naturalization, the government argues that the petitioner's omission, even if inadvertent, of her daughter on the EDV Entry Form and the Form DS-230 is sufficient to disqualify the petitioner from naturalization. The government alleges that, by failing to "disclose her daughter on her diversity visa lottery entry form and again on her diversity visa petition," the

petitioner (1) did not become a legal permanent resident "in accordance with the immigration laws" as required by 8 U.S.C. § 1101(a)(20), Govt.'s Mem. at 13, and (2) became "inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(II)," because her "diversity visa . . . was . . . not issued in compliance with Section 1153," *id.* at 14.  The only regulatory provision the government alleges the petitioner violated is 22 C.F.R. § 42.33(b)(1)(v) (2004). *Id.* at 12.  In other words, according to the government, the petitioner violated the diversity visa regulation, 22 C.F.R. § 42.33(b)(1)(v), by omitting her daughter both on the EDV Entry Form and the Form DS-230, disqualifying the petitioner from naturalization under two statutory provisions, 8 U.S.C. §§ 1101(a)(20) and 1182(a)(7)(A)(i)(II).  Govt.'s Reply Supp. Mot. Summ. J. ("Govt.'s Reply") at 7–8, ECF No. 17.

Although the government attempts to characterize the petitioner's omission of her daughter on Form DS-230 as a violation of 22 C.F.R. § 42.33(b)(1)(v), that regulation governs only the information required on the EDV Entry Form, not the Form DS-230.  *See* 22 C.F.R. § 42.33(b) ("The petition will consist of an electronic entry form that the alien petitioner or a person acting on the behalf of the alien petitioner must complete on-line . . . .").  Yet, the petitioner has raised a genuine dispute of material fact disputing whether the petitioner violated this regulation by omitting her daughter on the EDV Entry Form, the first step of the application process.

The government has not produced documentation demonstrating that the petitioner failed to disclose her daughter on her EDV Entry Form.  Instead, the government merely avers that "Wolde did not list her daughter on her EDV Entry Form," with citation to paragraphs 7 and 8 of the Petition.  Govt.'s SMF ¶ 7.  Paragraphs 7 and 8 of the Petition, however, reference only Form DS-230, filed on July 6, 2004, not the EDV Entry Form, which the government admits must have

been submitted by December 2003 for the petitioner's participation in the 2005 Diversity Visa Lottery.  *See* Pet. ¶¶ 7, 8; Govt.'s SMF ¶ 4.  Contrary to the government's assertion in its statement of uncontested facts, the petitioner "objects to the [Government's] Statement # 7, which states that Ms. 'Wolde did not list her daughter on her EDV Entry Form.'"  Pet.'s SMF ¶ 12 (quoting Govt.'s SMF ¶ 7).  The petitioner contests this assertion, stating that she "does not recall whether she listed her daughter on the EDV Entry Form or not; it was filled out by Mr. Gezahagn Mamo Ayano, the owner of Z-Photo in Addis Ababa."  *Id*.

The government contends that "the Court should reject Wolde's objections" to their assertion that the petitioner omitted her daughter from her EDV Entry Form because the petitioner's "pleadings establish that fact."  Govt.'s Reply at 2.  Specifically, the government claims that the petitioner relied on the owner of the internet café for "computer and internet services . . . to file the online EDV Entry Form, not her later, hand-written DS-230."  *Id.*  Therefore, when the petitioner claims in her opposition brief, that "the omission of her daughter occurred because Z-Photo filled out a form on Wolde's behalf," that "form" must have been referencing the EDV Entry Form.  *Id*.

The government mischaracterizes the petitioner's statement in her opposition brief.  The petitioner admits only that "she was given no instructions regarding" the EDV Entry Form, which "was prepared for her at an Internet café," and, as a result, "she did not even see the form before it was submitted," Pet.'s Opp'n Govt.'s Mot. Summ. J. ("Pet.'s Opp'n") at 9, ECF No. 16, corroborating the petitioner's objection in her statement of genuine issues of material fact, that she "does not recall whether she listed her daughter on the EDV Entry Form or not; it was filled out by Mr. Gezahagn Mamo Ayano, the owner of Z-Photo in Addis Ababa."  Pet.'s SMF ¶ 2.  The petitioner then states that "[s]imilarly, Ms. Wolde does not recall being given any

instructions at the time she completed the Form DS-230," and she "cannot be held responsible for an inadvertent omission caused by requirements that were not clearly conveyed to her." Pet.'s Opp'n at 9.  In short, the petitioner's opposition brief simply cannot be read, as the government contends, to be an admission that she omitted her daughter on the EDV Entry Form. Consequently, the government fails to meet its burden of demonstrating an absence of a genuine issue of material fact regarding whether she violated 22 C.F.R. § 42.33(b)(1)(v).[3]

Accordingly, it is hereby

**ORDERED** that the government's motion for summary judgment is **DENIED** without prejudice; and it is further

**ORDERED** that the parties shall, by April 18, 2016, submit a joint status report (1) advising the Court whether the petitioner requests an evidentiary hearing and (2) proposing a schedule to govern future proceedings to resolve this case, including any period of discovery, and dates for any hearing and pre-hearing conference.

**SO ORDERED**.

Date:  March 29, 2015

_____
BERYL A. HOWELL
Chief Judge

---

[3]  The Court is not presented with any cross-motion for summary judgment given the disputed facts. Ultimately, the petitioner bears the burden of proving her eligibility, either on a motion for summary judgment or at an evidentiary hearing, which the petitioner has not requested in her petition.  *See* Pet. at 5–6 (Request for Relief).